574 A.2d 737

**Clarence D. MEST, III, Petitioner,**

**v.**

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 5, 1990.

Decided May 14, 1990.

Richard A. Webster, with him, Richard J. Orloski, Orloski & Hinga, Allentown, for petitioner.

Terrance J. Buda, Asst. Counsel, with him, Frank B. Wilmarth, Deputy Chief Counsel, and John F. Povilaitis, Chief Counsel, for respondent.

Nancy J. Gellman, Conrad & O'Brien, Philadelphia, for intervenor, The Bell Telephone Co. of Pennsylvania.

Before COLINS, PALLADINO and MCGINLEY, JJ.

COLINS, Judge.

Clarence D. Mest, III (Mest) petitions for review of a Pennsylvania Public Utility Commission (PUC) order of June 5, 1989, adopting the initial decision of the Administrative Law Judge (ALJ) Richard M. Lobenwirth dated August 24, 1988 and denying the Exceptions filed thereto by Mest.

Mest is the father of Andrew Mest (Andrew), who prior to his first birthday was diagnosed as suffering from a cancerous brain tumor. From June to October of 1985 and again on January 23, 1986 until his death on March 12, 1986, Andrew was hospitalized at Children's Hospital in Philadelphia. From April 1985 to January 1986, Mest's telephone account was never in a current status and there was always a past due balance owing to Bell Telephone Company (Bell), intervenor.

On October 21, 1985 upon receipt of a request from Mest, Bell issued a 30–day medical emergency certificate. Bell renewed the original medical emergency certificate for an additional 30–day period, which expired on December 21, 1985. During the 60–day period that the medical emergency certificates were in effect, Mest failed to pay for current services rendered to him. No action was taken by Bell during this entire period. On December 26, 1985, after the medical emergency certification had expired, Bell sent Mest a written notice advising him to call the business office to make payment arrangements or his *toll service* would be terminated. On December 31, 1985, Mest called Bell and offered to pay his outstanding balance in two payments on January 2, 1986 and on January 16, 1986. Bell accepted Mest's proposed payment plan. However, Mest did not make the payments as promised. Before restricting *toll service*, Bell made numerous efforts to contact Mest, leaving messages for him to contact the business office. Effective January 23, 1986, Bell restricted Mest's toll service. Service was restored January 30, 1986, the date on which Mest paid his overdue bill. At no time was Mest's local service terminated. During the time of the toll restriction, Andrew was not in residence due to his hospitalization.

The issue raised by Mest concerns whether Bell violated the PUC's regulations concerning suspension of telephone service during a medical emergency, wherein Bell restricted telephone toll service after the medical emergency certificate had expired and after Mest failed to comply with the terms of the payment arrangements he had proposed.

Our scope of review is limited to determining whether the PUC violated constitutional rights, made an error of law, or whether the findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

Mest contends that Bell terminated his telephone service in violation of 52 Pa.Code (Code) §§ 64.101, 64.106, and 64.107. The relevant Code sections provide, in pertinent part:

§ 64.101. General provision.

No local exchange carrier may suspend or refuse to restore service to a dwelling when an occupant in the dwelling is certified by a physician to be seriously ill or affected with a medical condition which will be aggravated by a complete cessation of service except where access to emergency services by telephone is retained.

.    .    .    .    .

§ 64.106. Duty of customer to pay bills.

Whenever service is restored or suspension postponed under the medical emergency procedures, the customer shall:

(1) Make timely payment for all service provided by the local exchange carrier after the date on which service is restored or suspension postponed.

(2) Restrict interexchange usage to an amount no greater than $25 in a billing period while the medical certification is in effect.

§ 64.107. Suspension upon expiration of medical certification.

When the certification has expired, the original grounds for suspension shall be revived and the local exchange

carrier may suspend service without additional written notice, if notice previously has been mailed or delivered, if the customer has failed to make or to maintain an agreement on payment arrangements, and if the local exchange carrier makes a reasonable attempt to contact the customer at least 24 hours before suspension.

With regard to Section 64.101 of the Code, the record shows that Bell abided by this regulation by not suspending service during the period medical emergency certificates were in effect. Furthermore, cessation of service extended only to toll calls, after the medical emergency certification ended, and at a time when Andrew was no longer at the residence. The record also clearly shows that Bell complied with Section 64.107 of the Code in that it mailed notice regarding suspension of service, entered into an agreement proposed by Mest for repayment, and attempted further notice prior to the final suspension of toll service.

In arguing that Bell violated Section 64.106 of the Code, Mest misreads the entire thrust of this regulation. The duty here is on the customer to pay his bills. In fact, when suspension is postponed due to a medical emergency, the customer is still required to make monthly payments and furthermore to restrict the interexchange usage to an amount no greater than $25.00 in a billing period during the medical emergency. The record shows that Mest did not make any payments during the medical emergency period, nor did he restrict his usage to an amount no greater than $25.00.

Mest also argues that Bell demanded full payment before the expiration of the medical emergency, instead of arranging for a payment plan. Again, the record belies Mest's argument. Bell's demand for payment occurred after the expiration of the medical emergency; Bell's demand was not for full payment, but for a reasonable payment plan; and Bell agreed to Mest's proposed repayment plan. Mest complains that Bell had a duty to arrange for an extended payment plan. No such requirement can be

found in the Emergency Provisions of the Code. 52 Pa.Code §§ 64.101–64.108. Rather, the customer's failure to comply with the terms of an agreed upon payment schedule permits Bell to suspend service.

Having determined that the PUC was correct in concluding that Bell followed the regulations promulgated by the PUC and that there is substantial evidence in the record to support its findings, we affirm.

## ORDER

AND NOW, this 14th day of May, 1990, the order of the Pennsylvania Public Utility Commission in the above-captioned matter is affirmed.